IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NAUTILUS INSURANCE COMPANY    :

                                                  :

     v.                            :   Civil Action No. DKC 13-0169

                                                  :

REMAC AMERICA, INC., et al.    :

                                                  :

**MEMORANDUM OPINION**

Presently pending and ready for review in this insurance coverage dispute are two motions filed by Plaintiff Nautilus Insurance Company ("Nautilus"): (1) a motion for default judgment against Defendants REMAC America, Inc. ("REMAC") and Mark V. Soresi (ECF No. 22); and (2) a motion for summary judgment (ECF No. 4). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Nautilus's motions will be granted.

## I.   Background

###    A.   The Policy

This case involves a commercial general liability insurance policy issued by Nautilus to REMAC for the policy period of December 21, 2009 to December 21, 2010 ("the Policy"). The Policy identifies REMAC as the "Named Insured" with a mailing address in Potomac, Maryland. (ECF No. 1-3, at 4, Common Policy

Declarations).[1]  Under the heading "Location of All Premises You Own, Rent, or Occupy," the same Potomac address is the only address listed.  (*Id.* at 12, Commercial General Liability Coverage Part Declarations).  The Policy defines "insured" to include the "'executive officers' and directors" of REMAC, but only "with respect to their duties as [REMAC's] officers or directors."  (*Id.* at 21, Section II, Who Is An Insured).  Likewise, REMAC's stockholders are insureds "with respect to their liability as stockholders." (*Id.*).

The Policy generally requires Nautilus to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and to "defend the insured against any 'suit' seeking those damages."  (ECF No. 1-3, at 13, Section I – Coverages, Coverage A Bodily Injury and Property Damage Liability).  The Policy also requires Nautilus to "pay medical expenses . . . for 'bodily injury' caused by an accident . . . (3) Because of your operations."  (*Id.* at 19, Section I – Coverages, Coverage C Medical Payments).  "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at 24, Section V – Definitions).  "Suit" is defined

---

[1] All citations to page numbers in this Memorandum Opinion refer to CM/ECF pagination.

as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (*Id.* at 27).

The Policy also contains a number of exclusions. Relevant here, the Policy includes an endorsement titled "Exclusion – Injury to Employees, Contractors, Volunteers and Workers." (ECF No. 1-3, at 36, Form L205) ("the Employer's Liability Exclusion"). With respect to Coverage A for Bodily Injury and Property Damage Liability, the Employer's Liability Exclusion provides that:

> This insurance does not apply to:
>
> **e. Employer's Liability**
>
> "Bodily injury" to:
>
> (1) An "employee" of any insured arising out of and in the course of:
>
>> (a) Employment by any insured; or
>>
>> (b) Performing duties related to the conduct of any insured's business; or
>
> (2) The spouse, child, parent, brother or sister of that "employee" arising out of Paragraph (1) above.
>
> This exclusion applies:
>
> (1) Whether any insured may be liable as an employer or in any other capacity; and
>
> (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(*Id.*) (emphasis in original). The Employer's Liability Exclusion defines "employee" as follows:

> [A]ny person or persons who provide services directly or indirectly to any insured, regardless of whether the services are performed or where the "bodily injury" occurs including, but not limited to, a "leased worker", a "temporary worker", a "volunteer worker", a statutory employee, a casual worker, a seasonal worker, a contractor, a subcontractor, an independent contractor, and any person or persons hired by, loaned to, employed by, or contracted by any insured or any insured's contractor, subcontractor, or independent contractor.

(*Id.*). Elsewhere, the Policy contains a provision that makes all exclusions to Coverage A applicable to Coverage C Medical Payments. (*Id.* at 19, Coverage C Medical Payments, Section 2, Exclusion G).

### B. The Underlying Action

On January 24, 2012, Joseph Friend filed a lawsuit against REMAC in the Circuit Court for Berkley County, West Virginia ("the Underlying Action"). Mr. Friend's complaint in the Underlying Action alleges that, on March 26, 2010, he was working on a job site located near Martinsburg, West Virginia, as a REMAC employee. (ECF No. 1-1 ¶ 5). Mr. Friend avers that, on the day in question, REMAC required him "to operate heavy construction equipment that was attached to a similar piece of heavy construction equipment by a chain." (*Id.*). Mr. Friend asserts that, while following REMAC's instructions to use the

first piece of equipment to tow the second piece, the chain attaching the equipment "broke, or came loose, and came flying back at a high rate of speed and struck [him] in the head, severely injuring him." (*Id.*).

In Count I, Friend alleges that REMAC "negligently, grossly negligent[ly], carelessly, willfully, wantonly, wrongfully, and/or otherwise [unlawfully]" engaged in a number of acts or omissions that directly and proximately caused him to sustain the following harms:  temporary and permanent bodily injury; past and future medical expenses; past and future lost income; physical pain and suffering; mental anguish and emotional distress; loss of enjoyment of life; permanent scarring; humiliation; and embarrassment.  (ECF No. 1-1 ¶¶ 1-11). Specifically, Mr. Friend alleges that REMAC failed to use a chain that was appropriate and safety-rated for towing; failed to provide him with an enclosed cab to prevent him from being struck by flying debris; failed to perform a hazard assessment of the work site; and created or permitted unsafe and hazardous working conditions by, *inter alia*, not providing him with required personal protective equipment.  In Count II, Mr. Friend alleges that REMAC failed to follow federal workplace safety rules and that this failure proximately caused his injuries and damages. (*Id.* ¶¶ 12-14).  In Count III, Mr. Friend alleges that REMAC knew about the unsafe and hazardous conditions at the work

site; knew that such conditions violated "a safety statute, rule, regulation or . . . a commonly accepted and well-known safety standard"; and nonetheless intentionally exposed its employees to the unsafe working conditions, directly and proximately causing Mr. Friend's injuries and damages. (*Id.* ¶¶ 15-19). Mr. Friend also seeks punitive damages in connection with Counts I and II.

On March 1, 2012, REMAC removed the Underlying Action to the United States District Court for the Northern District of West Virginia. *See Friend v. REMAC Am., Inc.*, No. 12-cv-17 (N.D.W.Va.). On November 15, 2012, Mr. Friend moved for leave to file an amended complaint in the Underlying Action to add Mark V. Soresi as a defendant. Mr. Friend's proposed amended complaint alleged that Mr. Soresi is the "owner, operator, and sole shareholder" of REMAC. (ECF No. 1-2 ¶ 3). On February 14, 2013, Judge Groh denied Mr. Friend's motion for leave to amend on futility and prejudice grounds. *Friend v. REMAC Am., Inc.*, No. 12-cv-17, --- F.Supp.2d ----, 2013 WL 591346, at *5-6 (N.D.W.Va. Feb. 14, 2013).

### C. The Coverage Action

On January 15, 2013, Nautilus filed a complaint in this court that names REMAC and Mr. Soresi as Defendants and Mr. Friend as an "Interested Party." (ECF No. 1). Nautilus seeks a judgment declaring (1) that it has no duty under the Policy to

defend REMAC or Mr. Soresi against any claim asserted by Mr. Friend in the Underlying Action or that otherwise arises out of the "Occurrence," defined by Nautilus as the March 26, 2010 incident during which Mr. Friend was allegedly injured; and (2) that it has no duty under the Policy to indemnify REMAC or Mr. Soresi for any sums that either Defendant becomes liable to pay Mr. Friend in the Underlying Action or that otherwise arise out of the Occurrence. (*Id.* at 11). On January 25, ten days after filing its complaint, Nautilus moved for summary judgment. (ECF No. 4). On January 29, Nautilus served REMAC, Mr. Soresi, and Mr. Friend with a copy of the complaint, the summons, and its motion for summary judgment. (ECF Nos. 6, 8, & 10).

On March 7, 2013, Mr. Friend filed an answer to Nautilus's complaint (ECF No. 14), a jury trial demand (ECF No. 13), and a response to the motion for summary judgment (ECF No. 11). Nautilus filed a reply in support of its motion for summary judgment (ECF No. 16) and moved for entry of default against REMAC and Mr. Soresi (ECF Nos. 17, 19, & 20). On May 15, 2013, the clerk entered default against REMAC and Mr. Soresi. (ECF No. 21). On May 22, Nautilus moved for default judgment against REMAC and Mr. Soresi, incorporating its summary judgment motion by reference. (ECF No. 22).

**II.  Motion for Default Judgment**

**A.  Standard of Review**

Federal Rule of Civil Procedure 55(b)(2) authorizes the entry of default judgment against a properly served defendant who fails to file a timely responsive pleading.  In reviewing a motion for default judgment, the well-pleaded factual allegations in the complaint as to liability are accepted as true.  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001).  It must still be determined, however, "whether these unchallenged factual allegations constitute a legitimate cause of action."  *Agora Fin., LLC v. Samler*, 725 F.Supp.2d 491, 494 (D.Md. 2010).

Where, as here, a plaintiff seeks declaratory relief rather than monetary damages, default judgment is appropriate if the well-pleaded allegations of the complaint establish the plaintiff's right to such relief.  *See, e.g.*, *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F.Supp.2d 641, 645–46 (D.Md. 2009) (awarding default judgment in declaratory judgment action); *Am. Select Ins. Co. v. Taylor*, 445 F.Supp.2d 681, 684 (N.D.W.Va. 2006) (same); *cf. Penn Am. Ins. Co. v. Valade*, 28 F.App'x 253, 257–58 (4th Cir. 2002) (unpublished *per curiam* opinion) (affirming summary judgment in favor of insurer, against third party, following entry of default judgment against insured in declaratory judgment action).

**B.  Analysis**

Taking as true the well-pleaded allegations of the complaint, Nautilus states a claim for the declaratory relief it seeks.  As set forth below, Nautilus is entitled to a judgment declaring that it has no duty to defend or indemnify REMAC or Mr. Soresi in connection with the Underlying Action or any other claims asserted by Mr. Friend arising from the injuries he purportedly suffered on March 26, 2010.

**1.  Nautilus's Duty to Defend**

Under Maryland law, an insurer's duty to defend is a "contractual duty arising out of the terms of a liability insurance policy" and is "broader than the duty to indemnify." *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 225 (1997).[2] Whereas the insurer's duty to indemnify only attaches upon liability, "'[a]n insurance company has a duty to defend its insured for all claims that are potentially covered under the policy.'"  *Cowan Sys. v. Harleysville Mut. Ins. Co.*, 457 F.3d 368, 372 (4th Cir. 2006) (quoting *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 15 (2004)).

Determining whether an insurer has a duty to defend is a two-step process.  *St. Paul Fire & Marine Ins. Co. v. Pryseski*,

---

[2] As explained below in Section III.B., Maryland choice of law rules require the Policy to be interpreted pursuant to the substantive law of Maryland.

292 Md. 187, 193 (1981). First, the policy must be reviewed to determine the scope of, and any limitations on, coverage. *Id.; Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 103-04 (Md. 1995). Insurance policies are to be construed pursuant to "ordinary principles of contract interpretation." *Megonnell v. United Servs. Auto. Ass'n*, 368 Md. 633, 655 (2002) (internal quotations marks omitted). Thus, the words used in a policy should be given "their usual, ordinary, and accepted meaning" – *i.e.*, the "meaning a reasonably prudent layperson would attach to the term." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 779 (1993). Where the provisions of an insurance policy are unambiguous, the meaning of the terms is determined by the court as a matter of law. *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305 (2000).

As the second step in the duty-to-defend inquiry, the allegations of the underlying complaint must be analyzed to determine whether they would potentially be covered under the subject policy. *Pryseski*, 292 Md. at 193; *Cochran*, 337 Md. at 103-04. If there is any doubt as to "whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *Id.* at 107 (quoting *U.S. Fid. & Guar. Co. v. Nat'l Paving Co.*, 228 Md. 40, 54 (1962)).

Application of this two-step standard here establishes Nautilus's entitlement to a declaration that it has no duty to defend. As to the scope of coverage afforded by the Policy, the Employer's Liability Exclusion unequivocally excludes coverage for "bodily injury" to "an employee of any insured arising out of and in the course of (a) Employment by any insured; or (b) Performing duties related to the conduct of any insured's business." (ECF No. 1-3, at 36).[3] The same exclusion broadly defines "employee" to include "any person or persons who provide services directly or indirectly to any insured." (*Id.*). With respect to the allegations asserted in the Underlying Action, each of Mr. Friend's causes of action is based on the bodily injuries he suffered on March 26, 2010. Mr. Friend specifically avers that he "was an employee of [REMAC] and was working on a jobsite" on March 26, 2010, when he allegedly suffered his bodily injuries. (ECF No. 1-1 ¶ 5; ECF No. 1-2 ¶ 9). Such injuries therefore necessarily "arise out of" Mr. Friend's employment by REMAC and his performance of duties relating to

---

[3] Indeed, several courts in other jurisdictions have concluded that the very same endorsement, Form L205, is unambiguous on its face. *See, e.g.*, *Nautilus Ins. Co. v. Design Build Interamerican*, *Inc.*, No. 11-20772, 2012 WL 4025614, at *5-6 (S.D.Fla. Sept. 12, 2012); *Nautilus Ins. Co. v. S. Vanguard Ins. Co.*, 899 F.Supp.2d 538, 546-47 (N.D.Tex. 2012); *Nautilus Ins. Co. v. Triple C Constr., Inc.*, No. 10-2164, 2011 WL 42889, at *5 (D.N.J. Jan. 6, 2011); *Nautilus Ins. Co. v. K. Smith Builders, Ltd.*, 725 F.Supp.2d 1219, 1225 (D.Haw. 2010).

REMAC's business. Thus, a straightforward comparison of the pleadings in the Underlying Action with the unambiguous terms of the Policy compels the conclusion that there is no possibility of coverage for any claims that Mr. Friend asserts against REMAC in connection with the March 26, 2010 incident.

The same is true of any claims arising out of the March 26, 2010 incident that Mr. Friend might attempt to assert against Mr. Soresi in his capacity as an executive officer, director, or stockholder of REMAC.[4] Because such claims would also be based on bodily injuries that arise out of Mr. Friend's employment by REMAC, and because the Employer's Liability Exclusion applies regardless of "[w]hether any insured may be liable as an

_____

[4] Nautilus filed its complaint in this coverage lawsuit while Mr. Friend's motion for leave to amend his complaint in the Underlying Action was still pending. As noted above, Judge Groh later denied Mr. Friend's motion, meaning that Mr. Soresi is not actually a defendant in the Underlying Action. In some circumstances, the absence of pending litigation against an insured is a factor that counsels against exercising jurisdiction over an insurer's declaratory judgment action. For example, in *Empire Fire & Marine Insurance Co. v. Gross*, Judge Blake declined to exercise jurisdiction where the possibility of litigation against the policyholder was so remote that "setting out the rights of the parties . . . would come precariously close to being an advisory opinion." No. CCB-11-3598, 2013 WL 524766, at *2-3 (D.Md. Feb. 12, 2013). Here, by contrast, the threat of litigation against Mr. Soresi is both real and imminent, as evidenced by Mr. Friend's efforts to amend his complaint. These efforts create an actual, live controversy about the scope of defense and indemnity coverage that would be available to Mr. Soresi under the Policy. Accordingly, it is appropriate to award Nautilus's requested declaratory relief as to Mr. Soresi notwithstanding the absence of any pending litigation against him.

employer or in any other capacity," there is no possibility of coverage to the extent that Mr. Friend seeks to hold Mr. Soresi liable as an executive officer, director, or stockholder.[5] Accordingly, Nautilus's complaint establishes its entitlement to a judgment declaring that it owes no duty to defend either REMAC or Mr. Soresi against Mr. Friend's claims.[6]

### 2. Nautilus's Duty to Indemnify

As noted above, the duty to defend is broader than the duty to indemnify. Because the well-pleaded allegations of the complaint establish that Nautilus owes no duty to defend, they necessarily also establish that Nautilus owes no duty to indemnify REMAC or Mr. Soresi (in his capacity as a REMAC executive director, officer, or stockholder) for any sums they may become liable to pay to Mr. Friend in the Underlying Action or as a result of any other claim arising out of the March 26, 2010, incident. Thus, Nautilus's motion for default judgment against REMAC and Mr. Soresi will be granted.

---

[5] To the extent Mr. Friend seeks to hold Mr. Soresi liable in his individual capacity, the Policy would not afford coverage in the first instance because Mr. Soresi would not qualify as an "insured" with respect to such claims. (*See* ECF No. 1-3, at 20, Section II - Who Is an Insured).

[6] Because the Employer's Liability Exclusion supports Nautilus's entitlement to declaratory relief, the additional allegations in the complaint regarding the Policy's exclusion for punitive and exemplary damages need not be considered.

Mr. Friend, however, is "'not bound by the default judgment because, as an injured third party, [he is] entitled to defend on the merits in the declaratory judgment proceeding.'" *BSA Ltd. P'ship*, 602 F.Supp.2d at 646 n.2 (quoting *Valade*, 28 F.App'x at 256 n.*). When an insurer brings a declaratory judgment action against the insured and the injured third party, the third party "acquires standing – independent of that of the insured – to defend itself in the declaratory judgment proceeding." *Valade*, 28 F.App'x at 257. Accordingly, the default judgment that will be entered against REMAC and Mr. Soresi "does not negate the case or controversy existing between" Nautilus and Mr. Friend. *Id.* Rather, Nautilus's motion for summary judgment, and Mr. Friend's opposition thereto, must be considered separately.

## III. Motion for Summary Judgment

### A. Standard of Review

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

**B.    Analysis**

Nautilus's motion for summary judgment relies on the same coverage position set forth in its complaint, *i.e.*, that the plain, unambiguous terms of the Employer's Liability Exclusion bar defense and indemnity coverage for the Underlying Action and any other claim by Mr. Friend arising from the March 26, 2010 incident. (*See* ECF No. 4-1). In his opposition to Nautilus's motion, Mr. Friend does not challenge the merits of Nautilus's

position that the Employer's Liability Exclusion, on its face, bars coverage for his claims. (*See* ECF No. 11-1). Instead, Mr. Friend suggests that the applicability of Maryland law to the interpretation of the Policy is "not a foregone conclusion" and posits that, if West Virginia law were to apply, the "reasonable expectations" doctrine recognized in that state may provide a viable defense to Nautilus's motion. (*Id.* at 3).[7] As such, Mr. Friend requests that a ruling be deferred until the parties can engage in discovery regarding (1) "the material facts related to the formation and scope of the Policy" and (2) "whether the exclusionary provisions of the Policy were brought to the attention of the insured." (*Id.*). Mr. Friend's request is unavailing.

Ordinarily, summary judgment is inappropriate if "the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Rule 56(d) allows the court to deny a motion for summary judgment or delay ruling on the motion until

---

[7] Mr. Friend also attempts to create a genuine issue of material fact by questioning the authenticity of the version of the Policy submitted by Nautilus in connection with its motion for summary judgment. (ECF No. 11-1, at 2). In its reply, Nautilus negates this argument with a declaration confirming that the Policy attached to its motion as Exhibit 3 was certified as a true and correct copy of the Policy issued to REMAC. (ECF No. 16-1, at 2, Nechamkin Decl. ¶ 2).

discovery has occurred if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).[8]

The Fourth Circuit places "great weight" on the affidavit requirement and has observed that "[a] reference to [Rule 56(d)] and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a [Rule 56(d)] affidavit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (internal quotation marks omitted) (first alteration in original). Indeed, a failure to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Id.* At the same time, however, the Fourth Circuit has "not always insisted" on a formal affidavit and has excused non-compliance with Rule 56(d) "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002).

Notably, requests made pursuant to Rule 56(d) "'cannot simply demand discovery for the sake of discovery.'" *Hamilton*

---

[8] The 2009 Amendments to the Federal Rules of Civil Procedure transferred the language of former Rule 56(f) to Rule 56(d).

*v. Mayor & City Council of Balt.*, 807 F.Supp.2d 331, 342 (D.Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20 (D.Md. Feb. 14, 2011)). Courts interpreting Rule 56(d) have consistently held that a nonmovant's request may be denied if "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (internal quotation marks omitted). Put simply, Rule 56(d) does not authorize "fishing expedition[s]." *Morrow v. Farrell*, 187 F.Supp.2d 548, 551 (D.Md. 2002), *aff'd*, 50 F.App'x 179 (4th Cir. 2002).

Here, it is undisputed that Nautilus moved for summary judgment prior to engaging in any discovery. Mr. Friend, however, has not submitted a formal Rule 56(d) affidavit. Instead, he makes a general, unsworn request for discovery in his opposition to Nautilus's motion for summary judgment. This omission is, by itself, sufficient to deny his request, given that the Fourth Circuit places great weight on the affidavit requirement.

More importantly, Mr. Friend's request must be denied because neither area of discovery he identifies would create a genuine issue of material fact regarding Nautilus's duty to defend or indemnify under the Policy. First, Mr. Friend posits that he needs to explore the details surrounding the formation

of the Policy to ascertain which state's law should govern and, in particular, whether West Virginia law might apply. Mr. Friend fails to explain what set of facts could possibly compel the conclusion that West Virginia law governs.

Because subject matter jurisdiction in this case is predicated on diversity of citizenship, the choice of law rules of Maryland, the forum state, must be applied. *Klaxon v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941). In the absence of a contractual choice of law provision, Maryland generally adheres to the doctrine of *lex loci contractus* to decide which state's law controls the interpretation of an insurance contract. *See, e.g.*, *Allstate Ins. Co. v. Hart*, 327 Md. 526, 529 (1992). Under the *lex loci* doctrine, the law of the jurisdiction where the contract was made governs its interpretation. *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md.App. 146, 161 (2012). Maryland's appellate courts view the *locus contractus* of an insurance policy as the state in which the policy is delivered and where the premiums are paid, because such acts are the last acts necessary to make an insurance policy binding. *See Aetna Cas. & Sur. Co. v.*

*Souras*, 78 Md.App. 71, 77 (1989); *Monongahela Power*, 209 Md.App. at 162.[9]

Mr. Friend conclusorily contends that West Virginia law might apply, but offers nothing to suggest that the last act needed to form the Policy occurred in West Virginia. Rather, as Nautilus argues, the record demonstrates that both of the

---

[9] Several courts in this district have held that, if the subject insurance policy specifically provides that it will not be valid until it is countersigned by an officer or agent of the insurer, "the place of countersigning is held to be the place of the making of the contract, because the countersignature is the last act necessary to effectuate the policy." *Millenium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 893 F.Supp.2d 715, 725-26 (D.Md. 2012) (internal quotation marks omitted); *accord, e.g.*, *Rouse Co. v. Fed. Ins. Co.*, 991 F.Supp. 460, 464-65 (D.Md. 1998). In December 2012, however, the Court of Special Appeals of Maryland rejected this approach and reaffirmed that, under traditional offer and acceptance rules, the "last act[s]" necessary to form an insurance policy are the delivery of the policy to the insured and the insured's payment of premiums. *Monongahela Power*, 209 Md.App. at 165-66. The court thus held that the place of countersigning is irrelevant to the *lex loci* analysis – even where a policy contains an express provision that it "shall not be valid" unless countersigned. *Id.* at 166.

Here, the first page of the Policy states that "if required by state law, this policy shall not be valid unless countersigned by our authorized representative." (ECF No. 1-3, at 3). As Mr. Friend observes in his opposition, the line for a countersignature on the "Common Policy Declarations" is blank, although there is a typewritten notation to the left of the line stating "Countersigned:  Charlottesville, VA, 12/21/2009 CZC." (*Id.* at 4, Common Policy Declarations). Pursuant to the teaching of *Monongahela Power*, the apparent lack of a handwritten countersignature does not affect the validity of the Policy, and the place of any electronic countersignature is irrelevant to the choice of law analysis.

relevant "last acts" occurred in Maryland. With respect to delivery, Nautilus submits a declaration from Amy Nechamkin, its Senior Litigation Counsel, who avers that the company's standard practice is to deliver a policy to the mailing address listed on the policy's declarations page. (ECF No. 16-1, at 2, Nechamkin Decl. ¶ 3). As noted above, the address listed for REMAC in the Policy's declarations is in Potomac, Maryland. (ECF No. 1-3, at 4, Common Policy Declarations). It also appears that REMAC paid the premium for the Policy in Maryland, as evidenced by the use of Maryland's three percent tax rate in the calculation of the premium amount on the Common Declarations Page. (*Id.*).[10]

By contrast, there is nothing suggesting that either delivery or premium payment occurred in West Virginia. Ms. Nechamkin avers that the Potomac, Maryland address was the only address that Nautilus had on file for REMAC at the time it

---

[10] As Judge Hollander recently observed, the Court of Special Appeals of Maryland has issued opinions that are somewhat contradictory regarding whether the place "where the premiums [a]re paid" is the location where the premiums are received by the insurer or the state from which the policyholder pays. *See Baker's Exp., LLC v. Arrowpoint Capital Corp.*, No. ELH-10-2508, 2012 WL 4370265, at *13 (D.Md. Sept. 20, 2012) (summarizing conflicting opinions). Most recently, however, the Court of Special Appeals indicated that it is the state *from* which a policyholder pays the premium that controls. *Monongahela Power*, 209 Md.App. at 165 (affirming the trial court's ruling that Pennsylvania law applied because the insurer "offered no information leading to the conclusion that the policies were delivered to New York or that the premiums were paid *from* New York") (emphasis added).

issued the Policy and that Nautilus was not aware that REMAC had any operations in West Virginia. (ECF No. 16-1, at 2, Nechamkin Decl. ¶ 4). In addition, the Policy itself states that REMAC's only location was in Potomac, Maryland. (ECF No. 1-3, at 12, Commercial General Liability Coverage Part Declarations). Thus, it appears that West Virginia had no relationship to the formation of the Policy. Indeed, West Virginia's only apparent connection to this coverage dispute is that Mr. Friend allegedly suffered his injuries in the state. The place of a third-party claimant's injury, however, has no bearing on the choice of law analysis for a liability insurance policy. Because Mr. Friend fails to offer any reasoned argument as to how West Virginia could possibly be the *locus contractus* of the Policy, granting his request to explore whether West Virginia law *might* apply would be the equivalent of authorizing a fishing expedition.

The evidence Mr. Friend seeks in his second proposed area of discovery also would not alter the conclusion that Nautilus is entitled to judgment as a matter of law. Mr. Friend asserts that, without an opportunity to explore whether Nautilus affirmatively brought the Employer's Liability Exclusion to REMAC's attention, it is impossible to know whether the "reasonable expectations" doctrine could potentially serve to defeat Nautilus's coverage position. (ECF No. 11-1, at 3-5). In support of his argument, Mr. Friend relies exclusively on

citations to West Virginia case law interpreting the reasonable expectations doctrine. (*See id.*).[11] As discussed above, however, the evidence is clear that Maryland law governs the interpretation of the Policy.

In Maryland, extrinsic evidence is not admissible to interpret an insurance policy that is unambiguous on its face. *See Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 766-67 (1989); *Nat'l Cas. Co. v. Lockheed Martin Corp.*, 415 F.Supp.2d 596, 601 (D.Md. 2006) (Maryland law) ("While the character of the [insurance] contract, its object and purposes, and the factual circumstances of the parties at the time of execution may assist in interpreting the meaning of a particular contractual provision, clear and unambiguous language must be enforced as written."). Here, the terms of the Policy, including the Employer's Liability Exclusion, are plain and

_____

[11] For example, Mr. Friend notes that, in West Virginia, "the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though a painstaking study of the policy provisions would have negated those expectations." *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 736 (1987), *overruled on other grounds by Potesta v. U.S. Fid. & Guar. Co.*, 202 W.Va. 308 (1998). Relatedly, "[a]n insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." *McMahon & Sons*, 177 W.Va. at 736.

23

unambiguous. Accordingly, the extrinsic evidence that Mr. Friend seeks to discover could not alter the conclusion that Nautilus owes no duty to defend or indemnify REMAC or Mr. Soresi in connection with the Underlying Action or any other claim arising out of the injuries Mr. Friend allegedly suffered March 26, 2010. Mr. Friend's request for discovery will be denied, and judgment will be entered in favor of Nautilus.

## IV. Conclusion

For the foregoing reasons, the motions for default judgment and for summary judgment filed by Defendant Nautilus Insurance Company will be granted. A separate Order will follow.


                                                    /s/
                                              DEBORAH K. CHASANOW
                                              United States District Judge